**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
stevem@knightlaw.com
10250 Constellation Blvd., Suite 2500
Los Angeles, CA 90067
Telephone: (310) 552-2250
Fax: (310) 552-7973

Attorneys for Plaintiffs,
GUILLERMO SALAZAR and
ISABELLE SALAZAR

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO SALAZAR and ISABELLE SALAZAR, <br><br> Plaintiffs, <br><br> v. <br><br> GLENN E. THOMAS COMPANY INC., a California Corporation d/b/a GLENN E. THOMAS DODGE CHRYSLER JEEP; FCA US LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.: 2:20-cv-08114-DSF-PVC <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES** <br><br> [Filed Concurrently with Plaintiffs' Notice of Motion for Attorney's Fees, Costs and Expenses; Declaration of Steve Mikhov] <br><br> Date:  October 4, 2021 <br> Time: 1:30 p.m. <br> Dept.: 7D <br><br> Honorable Dale S. Fischer |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

## TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF FACTS ......................................................................3

     A.    Vehicle Repair History / Pre-Litigation Repurchase Request........3

     B.    Plaintiffs' Counsel's Efforts During Litigation.........................5

III.  ARGUMENT AND ANALYSIS...............................................................8

     A.    Plaintiffs' Attorneys Are Entitled to Fees, Costs and Expenses
        in this Action ...............................................................................8

     B.    The Hourly Rates Sought by Plaintiffs' Attorneys Are
        Reasonable...................................................................................9

           1.    The Nature and Complexity of the Litigation Support
               the Attorney's Fees Requested..........................................11

           2.    The Firm's Skill Justifies the Amount of Attorney
               Fees Sought ......................................................................12

     C.    Counsel Should Be Granted a Lodestar Multiplier ......................14

     D.    Plaintiffs is Entitled to Recover All Costs and Expenses
        Reasonably Incurred in Connection with this Action ..................16

IV.   CONCLUSION ......................................................................................17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

TABLE OF AUTHORITIES

Page(s)

Cases

*Carnes v. Zamani*
(9th Cir. 2007) 488 F.3d 1057……………………………………….....8

*Cazares v. Saenz*
(1989) 208 Cal.App.3d 279........................................................................14

*Dietrich v. Dietrich*
(1953) 41 Cal.2d 497 ................................................................................11

*En Palm, LLC v. Teitler*
(2008) 162 Cal.App.4th 770......................................................................12

*Goglin v. BMW of North America, LLC*
(2016) 4 Cal.App.5th 462 ...........................................................................9

*Graciano v. Robinson Ford Sales*
(2006) 144 Cal.App.4th 140..........................................................9, 10, 11, 14

*Graham v. DaimlerChrysler Corp.*
(2004) 34 Cal.4th 553 ..........................................................................8, 14

*Hadley v. Krepel*
(1985) 167 Cal.App.3d 677.......................................................................16

*Horsford v. Bd. of Trustees of Cal. State Univ.*
(2005) 132 Cal. App. 4th 359....................................................................15

*In re Chiron Corp. Securities Litigation*
(N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902.........14

*Jensen v. BMW of North America, Inc.*
(1995) 35 Cal.App.4th 112........................................................................16

*Ketchum v. Moses*
(2001) 24 Cal.4th 1122 ......................................................................14, 15

*La Mesa-Spring Valley School Dist. v. Otsuka*
(1962) 57 Cal.2d 309 ................................................................................12

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

*Los Angeles Police Protective League v. City of Los Angeles*
   (1986) 188 Cal.App.3d 1………………………….………………………10

*Mandel v. Lackner*
   (1979) 92 Cal.App.3d 747……………………………………………………8

*Mangold v. Cal Public Utilities Comm'n*
   (9th Cir. 1995) 67 F.3d 1470………………………………………………8

*Medina v. South Coast Car Co., Inc.*
   (2017) 15 Cal.App.5th 671…...………………………………………………11

*Molski v. Arclero Wine Group*
   (2008) 164 Cal.App.4th 786………………………………………………...12

*PLCM Group v. Drexler*
   (2000) 22 Cal.4th 1084………………………………………………10, 14

*Reveles v. Toyota by the Bay*
   (1997) 57 Cal.App.4th 1139…………………………………….......8

*Robertson v. Fleetwood Travel Trailers of California, Inc.*
   (2006) 144 Cal.App.4th 785........................................ 9, 10, 11, 14

*Serrano v. Priest*
   (1977) 20 Cal.3d 25 (*Serrano III*) ...............................................14

*Serrano v. Unruh*
   (1982) 32 Cal.3d 621 ...........................................................8, 10

<u>Statutes and Codes</u>

California Code of Civil Procedure
   Section 1032(a)(4) ...........................................................8

California Code of Civil Procedure
   Section 1033.5 ...............................................................16

California Civil Code
   Section 1794(d)  ....................................................... 3, 8, 14, 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

Fed. R. Civ. P. 68..…………………………………………………1, 6, 7

Other Authorities

Pearl, *California Attorney Fee Awards*
    Sections 12.14A, 12.33 (2nd Ed. 2005)....…………………………………..9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

# I.    INTRODUCTION

On May 18, 2021, about eleven months after the Complaint was filed in this action, the parties agreed to settle the case for the sum of $62,857.74 plus attorney's fees, costs, and expenses by motion where Plaintiffs would be the prevailing party for purposes of that motion by way of Defendant FCA US LLC and Glenn E. Thomas Company, Inc. dba Glenn E. Thomas Dodge Chrysler Jeep ("Defendants" or "FCA") acceptance of Plaintiffs Guillermo Salazar and Isabelle Salazar' ("Plaintiffs") Settlement Offer. This settlement amount consisted of a full statutory "buyback" of Plaintiffs' defective vehicle, incidental and consequential damages, and substantial civil penalties in what the defense routinely calls a "simple lemon law" action.

Plaintiffs obtained this extraordinary sum despite FCA's aggressive litigation tactics which included removing the case to Federal Court, engaging in extensive discovery, deposing Plaintiff and holding out for about eleven months of litigation before finally accepting Plaintiffs' reasonable settlement offer.

Based on the parties' meet and confer efforts prior to filing this motion, Plaintiff anticipates that FCA, in its Opposition, will argue the fees and costs incurred after its Rule 68 Offer were unreasonable. These arguments are incorrect for numerous reasons including but not limited to that FCA's offer failed to include material terms achieved in the ultimate settlement such as a timing of payment provision and prevailing party language. Plaintiff tried to address the deficiencies in FCA's offer and negotiate these terms promptly after FCA's Rule 68 Offer but FCA chose to ignore those efforts and litigate the case unnecessarily for another seven months.

By any analysis, Plaintiffs achieved an excellent settlement given FCA's initial refusal to even consider a buyback of Plaintiffs' defective vehicle. The settlement is one that few, if any, firms in this state can achieve for its clients. The

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

excellent result was achieved due to Plaintiffs' attorneys' skill and expertise in lemon law cases but, arguably, the biggest factor in Plaintiffs' success was Plaintiffs' attorneys' zealous representation.

Throughout her ownership of the vehicle, Plaintiffs suffered through ongoing problems including engine and electrical issues, which required multiple repair visits. Despite these multiple repair opportunities in which various components were replaced, the problems with the vehicle continued unabated.

Plaintiffs contacted FCA with the hope that FCA would repurchase their dangerous and defective vehicle, but FCA refused. Rather, FCA applied its tried and true internal policy of ignoring its statutory obligations under the Song-Berverly Act. By doing so, FCA made a business decision that, by its actions, Plaintiffs (like many consumers) would walk away and FCA would save money. Plaintiffs could not afford to do that and so Plaintiffs hired the Knight Law Group, LLP ("Knight Law") on a contingency basis to assist in vindicating their rights. Knowing that FCA had willfully violated Plaintiffs' rights and had already rejected informal resolution, Knight Law proceeded to file this case.

It should be noted that Plaintiffs, like all of Knight Law's clients, first tried to obtain resolution prior to retaining counsel by contacting the manufacturer and/or by going through the Better Business Bureau's established dispute resolution process.  Knight Law does not utilize litigation as a first resort.  Every single one of the firm's clients' repurchase requests were denied, or were countered with inadequate remedies pursuant to prevailing lemon law guidelines. By litigating lemon law cases, Knight Law exposes the unlawful practices of unscrupulous vehicle manufacturers and holds them accountable by achieving multiples of actual damages in the form of civil penalties (and punitive damages). The day Defendants uphold their statutory obligations to California's vehicle owners is the day Knight Law's consumer advocacy efforts become unnecessary.

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

This case, and others like it, could have been altogether avoided from the start. In the same manner that products liability actions have paved the way for innovations in manufacturing, design, safety and marketing standards, Plaintiffs' counsel aspires to utilize these lemon law cases to alter the dismissive attitude of vehicle manufacturers towards their aggrieved customers. The firm is willing to stand up to these mammoth companies, and advocate on behalf of those consumers who were sold defective vehicles and denied relief despite their best efforts to obtain redress.

The Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Civil Code sections 1790, *et seq.*, entitles Plaintiffs to seek reasonable attorney's fees, costs and expenses from FCA. Moreover, as the prevailing party in this matter as explicitly provided in the settlement, Plaintiffs is entitled to this noticed motion for attorney's fees, costs, and expenses. Plaintiffs now moves the Court: (1) for an Order entering Judgment against Defendant Glenn E. Thomas Company, Inc. dba Glenn E. Thomas Dodge Chrysler Jeep and in favor of Plaintiffs Guillermo Salazar and Isabelle Salazar in which attorneys' fees pursuant to Civil Code section 1794(d) under the "lodestar" method are awarded in the amount of $30,573.00, (2) for a reasonable, modest, "lodestar" modifier of 0.5 under California law, in the amount of $15,286.50, and (3) to award actual costs and expenses incurred in the amount of $1,391.50[2]. (Civ. Code § 1794(d).)   Plaintiffs requests a total of $47,251.00 in attorney's fees, costs and expenses. (Declaration of Steve Mikhov ("SM Dec.") ¶¶ 2-3, Exs. A-D)

## II.   STATEMENT OF FACTS

### A.   Vehicle Repair History / Pre-Litigation Repurchase Request

On April 6, 2017 Plaintiffs purchased a new 2017 Jeep Renegade VIN ZACCJAAB6HPE69406 for a total sales price of $25,279.00 inclusive of a $4,000 Mfg

---

[2] Plaintiffs is concurrently filing a motion for costs which attaches a bill of costs.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

Rebate ("Subject Vehicle").  (SM Dec., ¶ 4 Ex E.)  The vehicle was distributed by FCA US LLC which provided an express written warranty to be serviced by FCA's authorized repair facilities. (*Id.*)

On March 7, 2018, within the applicable warranty period, Plaintiffs took the Subject Vehicle to a FCA-authorized repair facility with electrical and transmission concerns. (SM Dec., ¶ 5) The technician updated the Transmission Control Module and replaced the internal park brake switch. (Id.) On January 16, 2019, Plaintiffs returned to the dealership with engine and electrical concerns. (SM Dec., ¶ 6) The technician replaced an engine coil and advised Plaintiffs regarding Safety Recall UB2 regarding the fuel pump module. (Id.) From January 29, 2019 to October 21, 2019 Plaintiffs returned to the dealership on at least four (4) occasions for engine and electrical related concerns. (SM Dec., ¶ 7) Despite multiple repair attempts these problems with the vehicle continued unabated. (Id.)

Despite the ongoing repairs and continued manifestation of problems, FCA refused to acknowledge the defective nature of Plaintiffs' vehicle. (SM Dec., ¶ 8) At all times, however, FCA had direct, contemporaneous knowledge of the vehicle's issues, which it records in various databases accessible to its authorized repair facilities and the corporate offices. (Id.) These repair records indicate each time the vehicle was presented for repair during the warranty period, as well as every time the FCA repair facility found a problem attributable to FCA, and billed FCA for the work. (Id.)

Frustrated, concerned for their safety and having lost confidence in FCA's ability to repair the vehicle, Plaintiffs contacted FCA customer service directly in or around April of 2019 and requested that they repurchase the defective vehicle. (SM Dec., ¶ 9)  Despite FCA's affirmative duty under the law to perform an investigation and offer relief, FCA refused to repurchase or replace the lemon in accordance with the Song Beverly Act. (Id.)

///

4

### B.   Plaintiffs' Counsel's Efforts During Litigation

With no other available avenue for relief, Plaintiffs contacted Knight Law and told the firm about the problems with the vehicle and the way FCA treated them. (SM Dec., ¶ 10) After reviewing the repair history and discussions with Plaintiffs, Knight Law agreed to represent them and bear the risk of litigating the case on a fully contingent basis. (Id.) Because Knight Law's compensation was purely contingent, the firm faced a genuine risk of not being paid for its services for years, if at all, while advancing thousands of dollars in costs and expenses on Plaintiffs' behalf. (Id.) In taking on this duty, the firm was facing a litigation behemoth—FCA is a multi-billion-dollar company, with a virtually infinite litigation war-chest, that wages a battle of attrition that most firms cannot withstand. (Id.)

As a result of FCA's failure to fix the material defects associated with Plaintiffs' vehicle, or otherwise comply with the Song-Beverly Act, Plaintiffs filed a Complaint in this action on June 26, 2020 in Los Angeles Superior Court, alleging willful violations of the Song-Beverly Act and seeking, among other things, civil penalties. (SM Dec., ¶ 11) Plaintiffs immediately benefited from Knight Law's expertise and efficiency, as just .5 hours were billed to draft Plaintiffs' 3-count, 8-page Complaint. (Id.) Plaintiffs' counsel are able to use existing files as templates to conserve time and litigate efficiently. (Id.) A detailed complaint of this magnitude, drafted from scratch and without the benefit of Plaintiffs' attorneys' vast knowledge, experience and specialized expertise, would have taken multitudes of the time expediently managed here. (Id.) FCA filed its Answer on July 29, 2020 denying liability and asserting numerous affirmative defenses. (Id.)

Knowing from experience that FCA's position and strategy in this litigation would demand extensive efforts in response, written discovery was promptly drafted and served on Defendants while the matter was still pending in state court on or about September 8, 2020, consisting of requests for admissions, requests for production of document, special interrogatories, and form interrogatories. (SM Dec.,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

¶ 12) Plaintiffs benefitted from Knight Law's expertise and experience in litigating against FCA once again as just 2.2 hours were billed for drafting the entirety of this written discovery. (Id.)

FCA then filed a notice of removal on September 4, 2020. (SM Dec., ¶ 13) On or about September 27, 2020 Plaintiffs prepared their initial disclosures. (Id.) On October 21, 2020 the parties submitted a Joint Rule 26(f) Report. (Id.)

On September 11, 2020, Defendant served a Rule 68 Offer for $62,857.74 which provided that payment of the settlement funds will be made no later than 90 days after the entry of acceptance of the September 2020 Rule 68 Offer. (SM Dec., ¶ 14 Ex F)  It also required that Plaintiffs surrender the subject vehicle but provided no deadline for Defendant to pay Plaintiffs the settlement funds following the surrender of the subject vehicle. (Id.) As such, Plaintiffs could surrender the subject vehicle within 30 days of executing the September 2020 Rule 68 Offer but would have to wait up to 60 days for payment. (Id.) Plaintiffs would be left without sufficient funds to purchase another vehicle. (Id,) Defendant's September 2020 Rule 68 Offer also did not deem Plaintiffs prevailing party. (Id.)

To correct these deficiencies, on October 15, 2020, Plaintiffs served a settlement offer in the same amount which included the following: payment of the settlement funds to be made within 45 days of executing the settlement offer; payment of the settlement funds to be made within 24 hours after surrender of the subject vehicle (so Plaintiffs do not have to wait for an undisclosed time without a vehicle); and prevailing party language. (SM Dec., ¶ 15 Ex G) Despite Plaintiffs October 2020 offer being for the same amount, Defendant refused to accept it. (Id.)

On November 30, 2020 Plaintiffs drafted a set of written discovery including requests for production, requests for admission, and interrogatories. (SM Dec., ¶ 16)

On December 17, 2020 FCA propounded a set of written discovery requests upon Plaintiffs which included requests for admissions, requests for production of documents, and interrogatories. (SM Dec., ¶ 17) Plaintiffs' counsel dutifully

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

analyzed each request, secured Plaintiffs' input, and drafted responses on or about February 12, 2021. (Id.)

On February 19, 2021, Plaintiffs again served an offer for $62,857.74 with the same terms as Plaintiffs' October 2020 offer. (SM Dec., ¶ 18) During this time, the parties met and conferred on suitable settlement terms but Defendant would not agree that Plaintiffs are prevailing party. (Id.) In an attempt to reach some middle ground, Plaintiffs modified its settlement offer and served another one on March 24, 2021 which allowed for payment to be made within 72 hours after surrender to give Defendant more time to disburse the settlement funds. (Id.) Defendant still refused and responded with a Rule 68 Offer on March 26, 2021. (Id.) The only difference between its October 2020 Rule 68 Offer and its March 2021 Rule 68 offer was that the latter provided for payment within 45 days instead of 90. (Id.) There was still no prevailing party language and no deadline for Defendant to pay following surrender. (Id.)

On May 6, 2021 FCA took the deposition of Plaintiff Guillermo Salazar. (SM Dec., ¶ 19)

On May 18, 2021, Defendant emailed Plaintiffs inquiring if Plaintiffs' February 2021 offer was still open. (SM Dec., ¶ 20) That same day, Plaintiffs served and settlement offer with the same terms as the February 2021 offer. (SM Dec., ¶ 20 Ex H) After seven months of refusing to sign Plaintiffs' settlement offers from October 2020 and February 2021, Defendant suddenly agreed to sign an offer with the same terms which included prevailing party language and a 24 hour deadline to pay the settlement funds following surrender. (Id.) The Settlement included a full buyback of Plaintiffs' defective vehicle, incidental and consequential damages, and substantial civil penalties. (Id.)

Plaintiffs, as the prevailing party in this action, has made every reasonable effort to resolve the payment of Plaintiffs' attorney's fees, costs, and expenses by FCA including detailed substantive discussions and creation of a joint statement but

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

1    were forced to file this Motion with the Court. (See Exhibits B-D) (SM Dec., ¶ 21)

2        Plaintiffs were compelled to file a motion to reopen the case on July 19, 2021

3    as FCA refused to stipulate to the relief sought. (SM Dec., ¶ 22) The Court granted

4    the motion on August 10, 2021. (Id.) The parties continued to meet and confer and

5    added additional arguments, objections, and responses to the joint statement. (Id.)

6    Unfortunately, the parties remained at an impasse and thus Plaintiffs filed this

7    motion. (Id.)

8                        **III.    ARGUMENT AND ANALYSIS**

9        **A.**    <u>**Plaintiffs' Attorneys Are Entitled to Fees, Costs and Expenses in**</u>

10               <u>**this Action**</u>

11        In a diversity case, the law of the state in which the district court sits

12    determines whether a party is entitled to attorney's fees, and the procedure for

13    requesting an award of attorney's fees is governed by federal law. (*Carnes v.*

14    *Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal Public*

15    *Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity

16    action, the Ninth Circuit "applied state law in determining not only the right to fees,

17    but also in the method of calculating the fees").

18        Plaintiffs is indisputably the prevailing party in this action as it is a term of

19    the settlement, and pursuant to the Song-Beverly Act, Plaintiffs, as the prevailing

20    party, is entitled to recoup all reasonable attorney's fees, costs and expenses incurred

21    in the commencement and prosecution of this action, even when there is a

22    contingency fee arrangement. (Code Civ. Proc. § 1032(a)(4); Civ. Code § 1794(d);

23    *see Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota*

24    *by the Bay* (1997) 57 Cal.App.4th 1139.  Absent a contrary showing, both the

25    number of hours that the prevailing party's attorney spent litigating the case and his

26    or her regular hourly rate are presumed to be reasonable. (*Serrano v. Unruh* (1982)

27    32 Cal.3d 621, 639 (counsel is entitled to all hours actually spent, absent a showing

28    of "special circumstances" that would render such an award unjust); *Mandel v.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

*Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is entitled to a presumption of reasonableness); Pearl, <u>California Attorney Fee Awards</u>, at §§ 12.14A, 12.33 (2nd Ed. 2005.)

In prosecuting this case, the efforts of Knight Law amount to $30,573.00, including drafting this motion and time anticipated to be spent preparing the reply and attending the hearing. (SM Dec., ¶¶ 2-3, Exs. A-D.) Plaintiffs' counsel also requests a modest 0.5 enhancement, in the amount of $15,286.50, to account for the delay in payment and contingent risk posed by this case, as well as the excellent result achieved. Lastly, the reimbursable costs and expenses set forth in Plaintiffs' motion for costs are $1,391.50. (SM Dec., ¶ 2)   In total, Plaintiffs requests $47,251.00 in fees, costs and expenses. (SM Dec., ¶¶ 2-3, Exs. A-D).

Plaintiffs have prepared a response to the objections FCA has made to the billing entries. (SM Dec., ¶ 3, Ex. D).

**B.   <u>The Hourly Rates Sought by Plaintiffs' Attorneys Are Reasonable</u>**

The California Court of Appeal has expressly held the lodestar method applies to determining attorney's fees under the Song-Beverly Act. (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817.)   The calculation of reasonable attorney's fees under the Song-Beverly Act is based on the lodestar method, which entails multiplying the number of hours reasonably expended by a reasonable hourly rate. (*Graciano v. Robinson Ford Sales* (2006) 144 Cal.App.4th 140, 154; *Robertson, supra,* 144 Cal.App.4th at 817.) The prevailing buyer has the burden of showing that the fees incurred were "allowable," "reasonably necessary to the conduct of the litigation," and "reasonable in amount." (*Goglin v. BMW of North America, LLC* (2016) 4 Cal.App.5th 462, 470.)  In making such an evaluation, a court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." (*Id.*)

In *Goglin v. BMW*, the appellate court recently affirmed the trial court's award of over $185,000 in attorneys' fees and costs for a Plaintiffs who settled her claims

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

against BMW under the Song-Beverly Act. (*Id.* at 464.)  The court also found Plaintiffs' counsel's hourly rate of $575 per hour was reasonable as supported by exhibits to counsel's declaration indicating various state and federal courts had previously awarded him comparable hourly rates. (*Id.* at 473-74.)  The holding states that the trial court was not obliged to consider that defendants paid their counsel a much lower hourly rate.  (*Id*. at 474.)

In *Robertson*, the trial court awarded $231,187.45 in fees based on $145,080.50 in fees through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for the attorney's fee motion. (*Robertson, supra,* 144 Cal.App.4th at 817.)  The appellate court upheld the ruling. (*Id.* at 822.)

In *Graciano*, the trial court initially rejected Plaintiffs' lodestar fees of $109,468.50 and request for a multiplier of 2.0.  In particular, the trial court reduced the Plaintiffs' attorney's hourly rate from the requested $350/hour to $250/hour, which was the court's mandated maximum rate for expert testimony.  The appellate court reversed, reasoning a court should determine the prevailing rate in the community for comparable professional legal services. (*Graciano, supra,* 144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).)  The court found the Plaintiffs' unrebutted declarations established the proper hourly rate at $350 (for work in 2004) and reducing that rate to $250 was an abuse of discretion. (*Id.*)  The court also reaffirmed attorney's fees <u>are not limited to a proportion</u> of the recovery. (*Id.* at 164.)  On remand, the trial court found that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for a total fee award of over $380,000.00.  The attorney from *Graciano*, Hallen D. Rosner, now charges $640/hour. (SM Dec., ¶ 39 (a).)

Furthermore, the California Supreme Court has expressly ruled that prevailing parties who are entitled to recover their attorney's fees are *also entitled* to recover their fees for the time spent preparing fee applications such as this one. (*Serrano v. Unruh*, *supra,* 32 Cal.3d at 631; *Los Angeles Police Protective League v. City of Los*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

*Angeles* (1986) 188 Cal.App.3d 1, 17; *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

Consideration of the "lodestar" factors compels an award of attorney's fees based on (i) the hourly rates set forth in the declaration filed concurrently herewith (SM Dec., ¶¶ 27-36), (ii) a survey of rates charged by other well-known consumer law attorneys (SM Dec., ¶ 39), (iii) numerous court orders confirming the reasonableness of Plaintiffs' counsels' hourly rates and time billed in other Song-Beverly Act cases including <u>Los Angeles County and the Central District</u> (SM Dec., ¶¶ 40-100, Exs. I-QQQ), and (iv) a National Survey further supporting the reasonableness of the hourly rates. (SM Dec., ¶ 101, Ex. RRR, at pp. 58-61.)

In *Medina v. South Coast Car Co., Inc.* (2017) 15 Cal.App.5th 671, the Court of Appeal affirmed a fee award to Plaintiffs' counsel. "Medina supported his request with extensive backup information including detailed billing records; **a 2013-2014 United States Consumer Law Attorney Fee Survey Report**; a nine-page detailed declaration by Christopher Barry, in which he reviewed the hours billed by each attorney, the myriad cases handled by his firm including under the CLRA, the ASFA and other consumer statutory schemes; and the names of just a sampling of the more than 1,000 cases his firm has handled in support of consumer protections laws." (*Id.* at 680.)  Plaintiffs' counsels' rates are within the range of rates charged by other attorneys with similar experience in this area of law.

## 1. <u>The Nature and Complexity of the Litigation Support the Attorney's Fees Requested</u>

Determining the amount of reasonable attorney's fees may involve consideration of the nature and complexity of the case. (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano, supra*, 144 Cal.App.4th at 147.)  FCA routinely claims that cases like this one are "simple lemon law cases" and, therefore, Plaintiffs' attorneys' fee requests are always unjustified as excessive. This case required a range of specialized knowledge including: (1) an understanding of the full scope of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

consumer protection laws, which are highly nuanced; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as knowledge concerning how to investigate issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations. (SM Dec., ¶ 104.) Plaintiffs' attorneys have acquired knowledge and insight about these issues over the course of many years of litigation, and this experience typically results in significantly higher judgments or settlements for their clients.

Moreover, FCA made this matter even more complex by maintaining it had no liability and litigating unnecessarily. In fact, FCA should have acknowledged the defects in Plaintiffs' vehicle and resolved the matter before this case was ever filed. Instead, FCA engaged in expensive litigation, including removing the case to Federal Court, engaging in extensive discovery, deposing Plaintiff and holding out for about eleven months of litigation before finally accepting Plaintiffs' reasonable settlement offer. FCA could have resolved this matter much earlier and saved tens of thousands in attorney's fees, costs and expenses by doing so. FCA ultimately capitulated, but not before causing substantial fees to be incurred.

When FCA causes the entirety of fees to be incurred, it has no legitimate basis for complaining about the amount of attorney's fees reasonably and actually incurred, especially when FCA had the opportunity to resolve the matter before a lawsuit was even filed. "A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the opposition in response." (*En Palm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 786; *see also Molski v. Arclero Wine Group* (2008) 164 Cal.App.4th 786.)

### 2.   The Firm's Skill Justifies the Amount of Attorney Fees Sought

A trial court may also take into account the skill of the attorneys when determining reasonable attorney's fees. (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309, 316.) Despite the case's difficulties, Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

ultimately recovered $62,857.74 in damages and civil penalties.  The vehicle was no more or less defective on the date of settlement than it was when Plaintiffs first asked for her money back before hiring legal counsel, so there is no rational explanation why FCA waged a lengthy and costly legal battle only to settle for a sum that included a civil penalty.

Plaintiffs' attorneys specialize in consumer law and did not balk at FCA's aggressive litigation tactics.  Plaintiffs' attorneys' experience has enabled them to develop litigation strategies that are highly effective and cost and time efficient. Plaintiffs' attorneys' specialized knowledge and experience in lemon law frequently results in outcomes far better than those obtained by attorneys who do not specialize in this specific area of law.  This experience provided a resolution to this matter far beyond that which FCA was previously willing to entertain. Because of this experience, knowledge and expertise, ***Plaintiffs went from a prelitigation offer of zero to an exceptional $62,857.74 settlement***.

Getting civil penalties, and often punitive damages, like this is not easy and most firms do not know how to seek exemplary damages or do not care to seek them. Plaintiffs' attorneys believe they distinguish themselves from others based on many years of focused pursuit of the truth.

Counsels' skill is evidenced by the size of the settlement as well as the nominal time expended on litigation tasks, which results in lower overall billing. Plaintiffs' attorneys do not spend inordinate time researching because they specialize in this area of law. (SM Dec., ¶ 105.)  Nor do they spend unreasonable time preparing pleadings because they are able to use documents from other cases that need only be edited, rather than written from scratch. (*Id.*)  While fees have been incurred, those fees led to the execution of effective strategies that result in superlative results for Knight Law clients, like Plaintiffs here.

On the other side, FCA is represented by large national firms with attorneys who specialize in representing automobile manufacturers in lemon law cases. FCA

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

is a corporate behemoth with the resources to easily overwhelm a consumer or an inexperienced attorney. Plaintiffs required skilled and experienced attorneys to prosecute his claims against FCA and its formidable resources. Plaintiffs' attorneys were well-suited for the task.

### C.   Counsel Should Be Granted a Lodestar Multiplier

As part of the Song-Berverly Act, a prevailing buyer may also receive a lodestar multiplier. (*Robertson, supra,* 144 Cal.App.4th at 817.)  Once a lodestar amount is determined, which involves a "careful compilation of the actual time spent and reasonable hourly compensation for each attorney," (*Id.* at 819 (*citing Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III*)), the amount may then be augmented by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award.  (*Id.*; *see also Graham, supra,* 34 Cal.4th at 579; *PLCM Group v. Drexler*, 22 Cal.4th at 1096.) "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases." (*Ketchum, supra,* 24 Cal.4th at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287-88 (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing).) "A 50 percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on." (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902, *9.) Plaintiffs asks for far less.

In *Robertson*, a case brought under the Song-Berverly Act, the court ruled that the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers," and the court granted a 1.5 multiplier. (144 Cal.App.4th at 817, 819.)  In *Graciano*,

the appellate court actually *increased* the trial court's award of fees after finding that the lodestar rate of $350/hour was reasonable and adding a 2.0 multiplier for a total award of over $380,000.00. (144 Cal.App.4th at 156.)

The lodestar is intended to reflect the basic fee for comparable non-contingent legal services and should be enhanced by an appropriate multiplier to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved.  The lodestar "multiplier" is meant to increase or decrease the fee award based on factors not already taken into account when setting the hourly rate, such as the <u>risk</u> of taking a case on a contingency basis, and <u>delay</u> in receiving payment. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 394-95.)

In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee contract, since it involves a gamble on the result, may properly provide for a *larger compensation* than would otherwise be reasonable."  (24 Cal.4th at 1132 [emphasis added].)

> <u>A contingent fee must be higher than a fee for the same legal services paid as they are performed.</u>  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans. (Posner, Economic Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.)  <u>A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.</u>  If he is paid no more, competent counsel will be reluctant to accept fee award cases.

(*Id.* at 1132 [citations omitted; emphasis added].)

Throughout the litigation, there always existed the possibility Plaintiffs would not prevail. The risk was compounded by the fact that Plaintiffs' attorneys advanced all litigation costs and expenses without reimbursement. Thus, if Plaintiffs did not prevail, her attorneys would have suffered a substantial loss of uncompensated attorney hours and thousands of dollars in out-of-pocket expenses.   Plaintiffs requests a 0.2 enhancement based on that risk.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

Further, FCA dragged this case out for about eleven months before finally accepting a reasonable settlement offer. Unlike FCA's attorneys who are paid monthly regardless of outcome, Plaintiffs' attorneys are not paid at all if they lose and need to absorb significant delay in being paid if Plaintiffs does win. On account of the substantial delay in payment, Plaintiffs requests a 0.3 enhancement.

Based on the risk of taking this case on a contingent fee basis and the delay in payment, as well as the excellent result achieved, Plaintiffs requests a nominal multiplier of 0.5.  Courts have awarded a lodestar multiplier to Plaintiffs' counsel in numerous cases in Los Angeles County. (SM Dec., ¶¶ 47, 52, 58, 69, 82, 96, 98, 99, 100, Exs. P, U, AA, LL, YY, MMM, OOO, PPP, QQQ.)

**D.**   **Plaintiffs is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action**

Under the Song-Beverly Act, a prevailing buyer shall be allowed to recover as part of the judgment a sum equal to the aggregate amount of costs <u>and expenses</u>. (Civ. Code § 1794(d) [emphasis added].)  The California Legislature intended the word "expenses" to cover outlays not included in the detailed statutory definition of "costs," and the Song-Beverly Act's legislative history demonstrates the Legislature exercised its power to permit recovery of a host of litigation expenditures beyond those permitted by Code of Civil Procedure § 1033.5 or by Rule 54(d). (*Jensen v. BMW of North America*, Inc. (1995) 35 Cal.App.4th 112, 137-138.)

A motion for costs generally satisfies the moving party's burden of establishing costs necessarily incurred. (*Hadley v. Krepel* (1985) 167 Cal.App.3d 677, 682.)  The motion for costs, which attaches a bill of costs demonstrates Plaintiffs' attorneys' costs and expenses prosecuting this matter, which counsel advanced on Plaintiffs' behalf.  (SM Dec. ¶ 2.)  The burden shifts to FCA to properly rebut the claimed costs.

///

///

16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

## IV.  CONCLUSION

For the reasons above, Plaintiffs respectfully requests this Honorable Court award attorney's fees, costs and expenses as follows:

| | |
|---|---|
| Lodestar Fees: | $30,573.00 |
| +Lodestar Enhancement: | $15,286.50 |
| Total Fees Requested: | $45,859.50 |
| +Costs and Expenses: | $ 1,391.50 |
| **=Total Fees and Costs/Expenses:** | **$47,251.00** |

Date:  September 2, 2021                    **KNIGHT LAW GROUP, LLP**


                                              By: /s/Steve Mikhov_____

                                                Steve Mikhov (SBN 224676)
                                              Attorney for Plaintiffs,
                                              **GUILLERMO SALAZAR and
                                              ISABELLE SALAZAR,**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES